1  KAREN P. HEWITT
   United States Attorney
2  DAVID L. KATZ
   Assistant United States Attorney
3  California State Bar No. 141295
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-5226 / Fax: (619) 235-2757
   Email: David.Katz@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,        ) Criminal Case No. 08CR0063-LAB
   |                                  )
11 |                Plaintiff,        ) *IN LIMINE* DATE: February 25, 2008
   |                                  ) TIME:              2:00 p.m.
12 |         v.                       )
   |                                  ) TRIAL DATE:       March 3, 2008
13 | PEDRO GARCIA,                    ) TIME:              3:00 p.m.
   |                                  )
14 |                Defendant.        ) GOVERNMENT'S STATEMENTS OF FACTS
   |                                  ) AND MEMORANDUM OF POINTS AND
15 |                                  ) AUTHORITIES IN SUPPORT OF MOTIONS
   |                                  ) *IN LIMINE*:
16 |                                  )
   |                                  ) (A) TO PROHIBIT REFERENCE TO WHY
17 |                                  )     DEFENDANT REENTERED THE
   |                                  )     UNITED STATES;
18 |                                  ) (B) TO ADMIT CERTIFICATE OF NON-
   |                                  )     EXISTENCE AND "A-FILE"
19 |                                  )     DOCUMENTS
   |                                  ) (C) TO ADMIT EVIDENCE OF DEPORT
20 |                                  )     HEARING;
   |                                  ) (D) TO PROHIBIT REFERENCE TO
21 |                                  )     DEFENDANT'S HEALTH, FINANCES
   |                                  )     OR POTENTIAL PUNISHMENT;
22 |                                  ) (E) TO ALLOW/PERMIT IMPEACHMENT
   |                                  )     BY EVIDENCE OF CONVICTION OF
23 |                                  )     CRIMES;
   |                                  ) (F) TO ALLOW/PERMIT RULE 404(b)
24 |                                  )     EVIDENCE;
   |                                  ) (G) TO ALLOW EXPERT TESTIMONY;
25 |                                  ) (H) TO ALLOW "A-FILE" CUSTODIAN
   |                                  )     TESTIMONY;
26 |                                  ) (I) TO PRECLUDE IMPROPER
   |                                  )     QUESTIONING REGARDING
   |                                  )     RECORDS;
27 |                                  ) (J) TO PRECLUDE EVIDENCE OF PRIOR
   |                                  )     RESIDENCY;
28 |                                  ) (K) TO PRECLUDE EVIDENCE OF
   |                                  )     DURESS AND NECESSITY; AND
   |                                  ) (L) TO ORDER FINGERPRINT
   |                                  )     EXEMPLARS
   | _____  )

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and DAVID L. KATZ, Assistant United States Attorney, and hereby files the following statement of facts and memorandum of points and authorities in support of the above referenced Motions *in Limine*.

**I**

**STATEMENT OF FACTS**

**A.    OFFENSE CONDUCT**

    1.    Defendant Attempts to Enter the U.S.

On October 21, 2007, at approximately 9:05 p.m., Defendant Garcia attempted to enter the United States from Mexico through the San Ysidro Port of Entry, as the passenger in a 2001 Ford Focus driven by Antonio Delgado. Defendant presented a California drivers license bearing the name "Benito Villa" to Customs & Border Protection (CBP) Officer Arambulo. Mr. Garcia told Inspector Arambulo that he was born in Los Angeles, California. Officer Arambulo suspected that Mr. Garcia was not the lawful owner or holder of the California drivers license he had presented and that Garcia had made a false claim of U.S. citizenship. For that reason, Officer Arambulo referred Defendant, the vehicle and its other passengers to the secondary inspection area.

In secondary, CBP Officer Scott Haynes checked Defendant's fingerprints through the AFIS/IDENT computer. The computer system determined that Defendant was, in fact, Pedro Garcia nad a citizen and national of Mexico. It also indicated that Defendant had been previously removed to Mexico. Defendant was then referred to the SYS POE Enforcement team.

Due to personnel shortages and a backlog of alien smuggling cases, CBP Officer Brooks was unable to conduct further queries on Mr. Garcia until the following morning, October 22, 2007 at approximately 5:00 a.m. At that time, Officer Brooks was able to determine Defendant's immigration history as well as his past criminal record in the United States. It was found that Defendant has been previously deported from the United States to Mexico on May 2, 2001; November 9, 2000; and March 11, 2004. Immigration Service records also showed that he had neither applied for nor received the permission of the U.S. Attorney General to re-enter the U.S.

//

At approximately 6:30 a.m. that same morning, CBP Enforcement Officer Sergio Barron advised Defendant of his Miranda rights, as witnessed by CBP Enforcement Officer Eric Velazquez. Defendant indicated that he understood al of his rights and was willing to be questioned and make a statement without counsel being present. Officers Barron and Velazquez noted that he did not appear to be ill, intoxicated or under the influence of drugs.

Mr. Garcia admitted that he is a citizen of Mexico and not the United States. He also admitted that he had been previously deported from the U.S. to Mexico. If he had successfully entered the U.S. the night before, he told the officers, he intended to travel to Los Angeles. He stated that the other occupants of the vehicle did not know his immigration status and that he had met them in a bar in Los Angeles before having driven with them to Tijuana to go to a few bars. At that time, Defendant declined to answer any further questions. He was notified of his right to have the Mexican consulate notified of his apprehension and he requested that it be so notified.

2.  Defendant's Criminal Record

Records and a fingerprint comparison also revealed that Defendant had been convicted of Attempted Entry to the United States after Deportation/Removal on April 8, 2003, for which he received a sentence of 18 months custody, and on October 11, 2006, for which he received a sentence of 20 months custody. Both convictions occurred in the U.S. District Court in Utah. On October 31, 2002, he was also convicted of Illegal Possession/Use of a controlled substance, for which he received a 0-5 year sentence in state court.

**II**

**ARGUMENT**

**A.  THE COURT SHOULD PROHIBIT DEFENDANT OR HIS COUNSEL FROM MAKING REFERENCE TO WHY HE REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence (or his counsel may attempt to comment upon) the reason for his reentry into the United States or, alternatively, his belief that he was entitled to reenter. The Court should preclude him from doing so. Evidence of *why* Defendant violated Section 1326 is irrelevant to the question of *whether* he did so, which is the only material issue in this case.

//

1       Federal Rule of Evidence 401 defines "relevant evidence" as:

2       evidence having any tendency to make the existence of any fact that is of consequence
to the determination of the action more probable or less probable than it would be without
3       the evidence.

4 Moreover, Rule 402 provides that evidence "which is not relevant is not admissible." Fed. R. Evid. 402.

5 Here, the reason why Defendant entered the United States–or his belief, if any, that he was justified in

6 doing so–is irrelevant to whether he violated Section 1326, and is therefore inadmissible.

7       United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980) is instructive. There, Komisaruk was

8 convicted of willfully damaging government property by vandalizing Air Force equipment. Id. at 491.

9 On appeal, she argued that the district court erred in granting the Government's motions *in limine* to

10 preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. Specifically,

11 she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the

12 Air Force equipment was illegal under international law, and that she was otherwise morally and legally

13 justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with

14 national defense policies could not be used to establish a legal justification for violating federal law nor

15 as a negative defense to the United States' proof of the elements of the charged crime," (Id. at 492), and

16 the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States, or

17 any belief that he was somehow entitled to do so, is irrelevant to any fact at issue.

18 **B.   THE COURT SHOULD ADMIT THE CERTIFICATE
19      OF NON-EXISTENCE AND "A-FILE" DOCUMENTS**

20       The Government intends to offer a certificate of non-existence, a warrant of deportation, and

21 potentially other documents (e.g., Order of the Immigration Judge) from the Immigration and

22 Naturalization Service's "A-File" regarding Defendant. The documents are self-authenticating "public

23 records" or, alternatively, "business records." Fed. R. Evid. 803(8)(B), 803(6).

24       The Ninth Circuit has held "that deportation documents are admissible to prove alienage under

25 the public records exception to the hearsay rule." United States v. Hernandez-Herrera, 273 F.3d 1213,

26 1217-18 (9th Cir. 2001). Indeed, deportation documents are routinely admitted to aid in proving

27 alienage. See, e.g., United States v. Parga-Rosas, 238 F.3d 1209, 1214 (9th Cir. 2001) (holding that

28 deportation documents, along with the defendant's statement at his deportation hearing that he was a

native and citizen of Mexico, sufficed to prove alienage); United States v. Sotelo, 109 F.3d 1446, 1448-49 (9th Cir. 1997) (A-file documents, coupled with testimony regarding defendant's admissions, sufficed to prove alienage); see also United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995); United States v. Loyola Dominguez, 125 F.3d 1315, 1318 (9th Cir. 1997) (holding A-file documents properly admitted as public records); United States v. Hernandez-Rojas, 617 F.2d 533, 535 (9th Cir. 1980) (holding district court properly admitted warrant of deportation as a public record). Likewise, a certificate of non-existence proves the absence of a public record and, thus, falls under an established exception to the hearsay rule. See FRE 803(10); United States v. Mateo-Mendez, 215 F. 3d 1039, 1042-43 (9th Cir. 2000); United States v. Hutchinson, 22 F.3d 846, 852 (9th Cir. 1993); United States v. Ventura-Melendez, 275 F.3d 9, 16 (1st Cir. 2001); United States v. Rith, 164 F.3d 1323, 1337 (10th Cir. 1999). Therefore, the Court should admit the certificate and the "A-File" documents.

**C.   THE AUDIO-TAPE AND TRANSCRIPT OF THE DEPORTATION HEARING ARE ADMISSIBLE**

The Government should be permitted to admit the audio tape and/or transcripts of deportation hearings which include admissions regarding citizenship, illegal status, and lack of permission to reenter the United States. Obviously, such admissions are relevant to the element of alienage and lack of permission to reenter. Should the Government seek to introduce it at trial, the Court should consider them as admissions by Defendant and permit its use for this limited purpose.

**D.   THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, FINANCES OR POTENTIAL PUNISHMENT**

Evidence of, or argument regarding, Defendant's health, finances, or potential punishment is inadmissible and improper. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Moreover, even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Ninth Circuit Model Criminal Jury Instruction 3.1 instructs jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Additionally, it is inappropriate for a jury to be informed of the consequences of its verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

//

Put simply, Defendant's health, finances and potential punishment may well be relevant at *sentencing*, but not during an illegal reentry trial.

### E.   THE COURT SHOULD ALLOW THE GOVERNMENT TO IMPEACH DEFENDANT WITH PRIOR CONVICTIONS

Records and a fingerprint comparison also revealed that Defendant had been convicted of Attempted Entry to the United States after Deportation/Removal on April 8, 2003, for which he received a sentence of 18 months custody, and, again, on October 11, 2006, for which he received a sentence of 20 months custody. Both convictions occurred in the U.S. District Court in Utah. On October 31, 2002, he was also convicted of Illegal Possession/Use of a controlled substance, for which he received a 0-5 year sentence in state court in Utah.

If Defendant elects to testify at trial, the Government intends to impeach him with these felony convictions pursuant to Federal Rule of Evidence 609(a)(1). Under United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987), a district court should consider five factors in balancing the probative value of a defendant's prior conviction to impeach him under Federal Rule of Evidence 609. These factors are: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of defendant's credibility. Id.; see also United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000).

Here, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that he was involuntarily brought to this country, or that he was not really an illegal alien, or that he was not really deported, or that he had the INS's consent to reenter. Because such defenses could only plausibly be developed through Defendant's own testimony, his credibility in asserting such alleged facts would be central to the case. Indeed, "[w]hen a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue." United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995). Furthermore, there is no prejudicial similarity between being a street gang member found in possession of a firearm and the instant offense (i.e., illegal reentry). Accordingly, the third, fourth, and fifth Browne factors weigh heavily in favor of admissibility.

The second <u>Browne</u> factor–the point in time of the conviction and the witness's subsequent history–also weighs in favor of admissibility. Although Defendant's convictions occurred in 1998 and 2006, there was only a short time between the time he was convicted of the 1326 and deported, and his presence, once again, in the United States following deportation.. Thus, his most recent conviction, i.e., of 1326, falls within the very first year of the 10-year time limit provided by Rule 609(b). The earlier conviction is also within the ten-year time limit. See <u>Browne</u>, 829 F.2d at 763 ("By its terms, Rule 609 allows for admissibility of such a prior conviction even where the defendant has been released for up to ten years.").

Finally, although crimes of being in possession of illegal drugs and 1326 are not crimes of "dishonesty" per se, Defendant's felony convictions still carry impeachment value. Indeed, by not limiting itself only to crimes involving dishonesty, Rule 609 effectively presumes that all felony convictions within the 10-year time limit carry at least some impeachment value. Here, because of the importance and centrality of Defendant's testimony, the impeachment value of his prior convictions outweighs whatever prejudicial effect the convictions might have. Therefore, if Defendant elects to testify, the Government should be allowed to impeach him with his prior felony convictions under Rule 609.

**F.  THE COURT SHOULD ALLOW THE GOVERNMENT TO INTRODUCE SIMILAR ACT EVIDENCE UNDER RULE 404(b)**

The United States intends to offer evidence regarding Defendant's illegal attempts to re-enter the United States, including his guilty plea and conviction in 2003 and 2006 of identical offense under Title 8, USC, Section 1326.

This conduct is relevant to Defendant's current case as it involves substantially the same conduct for which he is currently charged. On that one or more occasions, he either was found in, entered or attempted to illegally enter the United States after he had previously been deported. Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of "other acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other acts, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

1  The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). <u>See</u> <u>United States v. Montgomery</u>, 150 F.3d 983, 1000-01 (9th Cir. 1998). The court should consider the following: (1) the evidence of other crimes must tend to prove a material issue in the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time. <u>Id.</u> In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test - its probative value must not be substantially outweighed by the danger of unfair prejudice. <u>See</u> Fed. R. Evid. 403.

Here, Defendant's prior act of attempting to illegally re-entering the United States following his prior deportation or removal are virtually identical to the present charge. The probative value of this information is not substantially outweighed by any prejudicial effect. Evidence of this act is admissible under Rule 404(b) for purposes of proving preparation, plan, knowledge, absence of mistake or accident. The United States intends to offer the Judgement & Commitment Order and possibly the transcripts of his plea in that 2006 case.

Further, the United States asserts that the 2003 and 2006 pleas and convictions for violations of 8 U.S.C. § 1326 contains admissions and is a final court finding that he is a citizen of Mexico, that he had no legal right to enter the United States, that he had not applied for readmission into the United States, and that he had been previously removed from the United States. The United States believes that these statements and his conviction are admissible as admissions of a party opponent under Fed. R. Evid. 801(d)(2). <u>See</u> <u>United States v. Ant</u>, 882 F.2d 1389, 3192-93 (9th Cir. 1989) (noting that valid prior guilty plea admissible as an admission under 801(d)(2), citing <u>United States v. Riley</u>, 684 F.2d 542, 544 (8th Cir. 1982), <u>cert.denied</u>, 459 U.S. 1111 (1983)).

**G.   THE COURT SHOULD ADMIT EXPERT TESTIMONY**

At trial, the Government intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously removed from the United States and, if permitted pursuant to these motions, identify Defendant as the person convicted in Utah, in 2003 and 2006, of the same offense. This motion will provide written notice of this intention, and the Government, as soon as they are

available, will provide Defendant the actual report written by the expert as well as the expert's qualifications.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. See Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).

An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. See Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. See Fed. R. Evid. 704.

Here, comparisons of Defendant's fingerprints against fingerprints on deportation documents are necessary to prove identity. Fingerprint comparisons are widely accepted and thus no Daubert hearing is necessary. United States v. Sherwood, 98 F.3d 402, 408 (9th Cir.1996). To the extent Defendant questions the validity of the fingerprint comparison, this is a question of weight and credibility that properly went to the jury. Kennedy v. Collagen Corporation, 161 F.3d 1226, 1230-31 (9th Cir.1998), cert. denied, 119 S. Ct. 1577 (1999) (noting that faults in an expert's use of a specific methodology go to the weight, not admissibility of the testimony).

### H.     TESTIMONY OF AN A-FILE CUSTODIAN IS PERMISSIBLE

A Government witness is prepared to testify regarding the documents in Defendant's A-file and provide some context and meaning to them at trial. The A-File witness will testify about standard record keeping and administrative procedures of the Immigration authorities. An adequate foundation will be established for his testimony at trial. Further, the Ninth Circuit has previously held that many observations, even by law enforcement personnel, which are common enough yet still require a limited amount of expertise, can properly be characterized as lay witness opinion. See United States v. Von Willie, 59 F.3d 922, 929 (9th Cir. 1995); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".)

1    Accordingly, this Court should allow testimony regarding the standardized procedures employed in immigration proceedings and immigration record keeping. This testimony will be presented by someone with direct experience and knowledge of these procedures, and is admissible. In the event the Court considers this witness as an expert, the Government has already provided written notice to Defendant.

**I.    THE COURT SHOULD PROHIBIT IMPROPER QUESTIONING**

The United States seeks to exclude Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks to preclude reference to argument that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by the Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 393 F.3d 849 (9th Cir. 2005) (affirming District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case).    The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 856. The Ninth Circuit explicitly rejected defense counsel's claim that the District Court's exclusion of the anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the that information is relevant on the facts of this case, because it is uncontested that Rodriguez-Rodriguez never made any application to the INS or any other federal agency." Thus, absent at a minimum a proffer that Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a (former) INS contractor as set forth in United States v. Salazar, 455 F.2d 1022 (9th Cir. 2006), unless the Defendant testifies or offers evidence that (1) he did in fact apply for permission to

1  reenter the United States from the Attorney General, or his designated successor, the Secretary of the
2  Department of Homeland Security <u>and</u> (2) that such a document would have been stored at that
3  particular facility where the shredding occurred in the <u>Salazar</u> case. Any reference of document
4  destruction is irrelevant and unfairly prejudicial unless there is some evidence offered by the Defendant
5  at trial that he did in fact seek permission to reenter the United States. <u>See</u> Fed. R. Evid. 401-403.

6   Moreover, even if the Defendant offers evidence that he did apply, there must be some showing
7  that his application would have been stored at the facility which is the subject of the <u>Salazar</u> case during
8  the time of the alleged shredding of the documents. Otherwise, it is immaterial and irrelevant whether
9  a contractor of (former) INS destroyed documents at the INS California Service Center in Laguna
10 Niguel, California because the Defendant did not apply, or if he did apply, his application was not stored
11 there, and therefore, could not have been effected. Such testimony as well as any such statements
12 asserted in Defendant's opening or closing arguments would be unfairly prejudicial to the United States
13 and likely to cause confusion to the jury because such unsupported blanket allegations or references of
14 document destruction or poor record keeping without any showing by the Defendant that he applied for
15 permission to reenter would be misleading. Accordingly, the United States seeks an order precluding
16 such argument.

17 **J.    <u>EVIDENCE OF PRIOR RESIDENCY IS IRRELEVANT</u>**

18   If Defendant seeks to introduce evidence at trial of any former residence in the United States,
19 legal or illegal, the Court should preclude him from doing so. Such evidence is not only prejudicial, but
20 irrelevant and contrary to Congressional intent.

21   In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United
22 States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the
23 United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. <u>Id.</u>,
24 <u>overruled on limited and unrelated grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th
25 Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to
26 demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly
27 excluded it as irrelevant. <u>Id.</u>
28 //

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion *in limine* to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of:

> (1) involuntariness of initial residence;
> (2) continuous residency since childhood;
> (3) fluency in the English language; and
> (4) legal residence of immediate family members.

Id. at 712.

The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." Id. In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182©), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. Id. at 712-13. The factors which the defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion." Id. at 713.

Thus, the court reasoned, "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries*." Id. (emphasis added).

### K.  THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS, NECESSITY OR ANY OTHER REASON WHY DEFENDANT RE-ENTERED THE U.S.

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**L.    REQUEST FOR ORDER THAT DEFENDANT BE FINGERPRINTED**

Part of the Government's burden of proof in this case is to satisfy the jury that the defendant is the same individual who was deported from the United States to Mexico. To make that showing, the Government will call an expert in fingerprint identification to testify that the defendant is in fact the individual whose fingerprints appear on the warrant of deportation. The most efficient and conclusive

1 manner of establishing this information is to permit the expert witness himself to take a set of
2 defendant's fingerprints for comparison.

3 Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S.
4 757 (1966). Using identifying physical characteristics, such as fingerprints, does not violate defendant's
5 Fifth Amendment right against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th
6 Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge,
7 676 F. Supp. 1041, 1043 (D. Mont. 1987).

8 The Government therefore respectfully requests that the Court order that defendant make himself
9 available for fingerprinting by the Government's fingerprint expert.

## III

## CONCLUSION

For the above stated reasons, the Court should grant the Government's Motions *in limine*.

DATED: February 12, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/*David L. Katz*
DAVID L. KATZ
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: David.Katz@usdoj.gov

|     |     |
| --- | --- |
| 1   | UNITED STATES DISTRICT COURT |
| 2   | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0063-LAB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| PEDRO GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, DAVID L. KATZ, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the: **GOVERNMENT'S STATEMENTS OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS *IN LIMINE*: (A) TO PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED THE UNITED STATES; (B) TO ADMIT CERTIFICATE OF NON-EXISTENCE AND "A-FILE" DOCUMENTS; (C) TO ADMIT EVIDENCE OF DEPORT HEARING; (D) TO PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, FINANCES OR POTENTIAL PUNISHMENT; (E) TO ALLOW/PERMIT IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIMES; (F) TO ALLOW/PERMIT RULE 404(b) EVIDENCE; (G) TO ALLOW EXPERT TESTIMONY; (H) TO ALLOW "A-FILE" CUSTODIAN TESTIMONY; (I) TO PRECLUDE IMPROPER QUESTIONING REGARDING RECORDS; (J) TO PRECLUDE EVIDENCE OF PRIOR RESIDENCY; (K) TO PRECLUDE EVIDENCE OF DURESS AND NECESSITY; AND (L) TO ORDER FINGERPRINT EXEMPLARS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Carey D. Gorden, Esq.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 12, 2008.

s/*David L. Katz*
DAVID L. KATZ
Assistant United States Attorney