```
 1  CAREY D. GORDEN
    California State Bar No. 236251
 2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
    225 Broadway, Suite 900
 3  San Diego, California 92101-5030
    Telephone: (619) 234-8467
 4  e-mail: carey_gorden@fd.org
 5
    Attorneys for Mr. Garcia
 6
 7
```

| | | |
|---|---|---|
| 8 | | UNITED STATES DISTRICT COURT |
| 9 | | SOUTHERN DISTRICT OF CALIFORNIA |
| 10 | | **(HONORABLE LARRY ALAN BURNS)** |

| | | | |
|---|---|---|---|
| 11 | UNITED STATES OF AMERICA, | ) | Case No. 08cr0063-LAB |
| 12 | Plaintiff, | ) ) | DATE: February 25, 2008 TIME: 2:00 p.m. |
| 13 | v. | ) ) | NOTICE OF MOTIONS AND MOTIONS TO: |
| 14 | PEDRO GARCIA, | ) ) | (1)  DISMISS THE INDICTMENT DUE TO |
| 15 | Defendant. | ) ) | AN INVALID DEPORTATION |
| 16 | | ) ) | |
| 17 | | ) | |

18  TO: KAREN P. HEWITT, U.S. ATTORNEY, AND
     STEWART YOUNG, ASSISTANT UNITED STATES ATTORNEY:

19  **PLEASE TAKE NOTICE** that on February 25, 2008 at 2:00 p.m., or as soon thereafter as

20  counsel may be heard, the defendant, Pedro Garcia, by and through his counsel, Carey D. Gorden

21  and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions

22  listed below.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# MOTIONS

Pedro Garcia, the defendant in this case, by and through his attorneys, Carey D. Gorden, and Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, FED. R. CRIM. P. 12, 16 and 26, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

(1) Dismiss the indictment due to an invalid deportation.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

/s/ Carey D. Gorden

Dated:   February 19, 2008   **CAREY D. GORDEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Garcia

CAREY D. GORDEN
California State Bar No. 236251
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
e-mail: carey_gorden@fd.org

Attorneys for Mr. Garcia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY ALAN BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  08cr0063-LAB |
| Plaintiff, ) | DATE:  February 25, 2008 |
| ) | TIME:  2:00 p.m. |
| v. ) | |
| PEDRO GARCIA, ) | STATEMENT OF FACTS, |
| ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**[1]

On April 26, 2001, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, alleging that Mr. Garcia was not a citizen of the United States, that he had entered the United States at or near San Ysidro California on or about November 2000 and that he was not admitted or paroled after inspection by an immigration officer. See Exhibit [A], Notice to Appear. Mr. Garcia was removable for being an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the

---

[1] The following statement of facts is based on discovery produced by the government which Mr. Garcia reserves the right to challenge at a later date. The facts outlined above include only the facts relevant to challenging the validity of Mr. Garcia's removal. For additional facts, please refer to the statement of facts contained in Mr. Garcia's earlier motion.

Attorney General. Mr. Garcia appeared before an Immigration Judge ("IJ") on May 2, 2001. During the hearing, Mr. Garcia asked the IJ for voluntary departure. The IJ denied Mr. Garcia's request based on the mistaken assumption that Mr. Garcia's had suffered an aggravated felony conviction for possession with the intent to distribute in violation of Utah Code 58-37-8(1)(a)(iii), whereas Mr. Garcia's conviction was for unlawful possession of a controlled substance in violation of Utah Code 58-37-8(1)(a)(iii). See Exhibit [B], Transcript of Removal Proceeding[2]. The IJ ordered Mr. Garcia to be removed from the United States to Mexico on May 2, 2001. See Exhibit [C], Order of the Immigration Judge.

## II.

**THE COURT SHOULD DISMISS THE INDICTMENT DUE TO THE INVALIDITY OF MR. GARCIA'S PRIOR DEPORTATION.**

**A. Mr. Garcia Has the Right to Collaterally Attack His Deportation.**

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). A defendant such as Mr. Garcia, who is charged with illegal reentry under section 1326, has a Fifth Amendment right to attack his removal order collaterally because the removal order serves as a predicate element of his conviction. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."). See also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing Zarate-Martinez and Mendoza-Lopez for these principles).

To successfully collaterally attack his deportation, Mr. Garcia must demonstrate that: 1) he exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and, 3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364 F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if:

---

[2]The deportation tape is in the process of being transcribed and will be filed once it is completed.

1  '1) a defendant's due process rights were violated by defects in his underlying deportation
2  proceeding, and 2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at
3  1048 (citing Zarate-Martinez, 113 F.3d at 1197) (brackets omitted).

4       Importantly, although Mr. Garcia carries the initial burden on the issue of prejudice, once Mr.
5  Garcia makes a prima facie showing of prejudice, ***the burden shifts to the government to***
6  ***demonstrate that the procedural violation could not have changed the proceedings' outcome***.
7  United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). As
8  explained below, Mr. Garcia can demonstrate each of the elements necessary for this Court to
9  sustain his collateral attack.

10 **B.  In Order to Successfully Attack His Prior Deportation, Mr. Garcia Did Not Have to Exhaust Any Administrative Remedies Because His Waiver of Appeal Was**
11 **Invalid.**

12      The exhaustion requirement of 1326(d) does not "bar collateral attack of a deportation
13 proceeding when the waiver of the right to an administrative appeal did not comport with due
14 process." Ubalda-Figueroa, 364 F.3d 1042, 1048 (citing United States v. Muro-Inclan, 249 F.3d
15 1180, 1182 (9th Cir. 2001)). A waiver of the right to appeal a deportation order does not comport
16 with due process unless it is considered and intelligent. Id.

17      For a waiver to be considered and intelligent, several requirements must be met. First, there
18 must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v.
19 Zerbst, 304 U.S. 458, 464 (1938). In other words, a person must clearly understand the scope of the
20 right or privilege and intentionally forfeit this right. In addition, the burden is on the government
21 to prove that there has been a knowing and intelligent waiver of the right to appeal. United States
22 v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993); Zarate-Martinez, 133 F.3d 1194, 1197
23 (9th Cir. 1998).

24      In the context of a deportation proceeding, additional specific requirements must be met for
25 a waiver to be knowing and intelligent. An immigration judge must explore the possibility of any
26 potential relief from deportation. Ubalda-Figueroa, 364 F.3d at 1049. The immigration judge is
27 required "to advise the alien of [potential relief] and give him the opportunity to develop the issue"
28 when "the record contains an inference that the petitioner is eligible for relief from deportation."

1  Id. at 1049-50 (citing Muro-Inclan, 249 F.3d at 1182.) When this is not done, a person is exempt
2  from the exhaustion requirement of 1326(d). Id.
3       In the case of Mr. Garcia, he does not have to prove that he exhausted administrative remedies
4  because his waiver of appeal was not knowing and intelligent. Mr. Garcia was incorrectly advised
5  that he was not eligible for voluntary departure. Neither of his convictions for possession of a
6  controlled substance constitute an aggravated felony for purposes of immigration law. See Lopez
7  v. Gonzalez, 127 S.Ct. 625, 633 (2006). Since he was not convicted of an aggravated felony he was
8  eligible for voluntary departure.
9       An IJ's failure to advise the alien of his eligibility for relief from deportation makes a
10 deportation proceeding defective. Ubaldo-Figueroa, 364 F.3d at 1048. See also Arce-Garcia,
11 163 F.3d at 563 ("[W]here the record contains an inference that the petitioner is eligible for relief
12 from deportation, the IJ must advise the alien of this possibility and give him the opportunity to
13 develop the issue."); Lopez-Vasquez, 1 F.3d at 754 (holding that IJ hearing deprived petitioner's
14 right to due process even where the IJ explained the right to appeal and provided petitioner with a
15 form explaining his right to an appeal in Spanish because the information was given to him in a
16 group format); Mendoza-Lopez, 471 U.S. at 840 (failure of IJ to advise alien of his right to appeal
17 and his eligibility for a waiver of deportation violated his due process rights and "amounted to a
18 complete deprivation of judicial review of the determination); Arrieta, 224 F.3d at 1079 (finding due
19 process violation because IJ failed to tell defendant about his eligibility for a waiver of deportation);
20 Moran-Enriquez v. INS, 884 F.2d 420, 423 (9th Cir. 1989) (where record, fairly reviewed by a
21 person intimately familiar with the immigration laws (the IJ) raises a reasonable possibility that the
22 petitioner may be eligible for relief, the IJ must advise the alien of this possibility, if the petitioner
23 is not advised of this possibility, the appellate waiver is invalid) (citing 8 C.F.R. § 242.17(a)). It is
24 well-settled that Mr. Garcia's failure to appeal the IJ's order of deportation and exhaust his
25 administrative remedies cannot bar collateral review of his deportation proceeding where the defects
26 in the proceeding served to persuade Mr. Garcia that any appeal would be futile.
27 / / /
28 / / /

1  **C.  Mr. Garcia Was Prejudiced By the Defects at His 2000 Deportation Hearing Because He Had A Plausible Ground of Relief from Deportation.**

To show prejudice, Mr. Garcia need not show that he would actually have been granted relief. He need only show that he had a plausible legal challenge to his removal order. Ubaldo-Figueroa, 364 F.3d at 1050. As the Ninth Circuit recently reiterated, prejudice means that "the outcome of the proceedings *may have been affected* by the alleged violation." Zolotukhin v. Gonzales, 417 F.3d 1073, 1076 (9th Cir. 2005) (emphasis in original). "The standard does not demand absolute certainty; rather prejudice is shown if the violation '*potentially* . . . affects the outcome of the proceedings.'" Id. at 1077 (citing Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002)) (emphasis in original). For example, in Zolutukhin, the government argued that the petitioner lacked good character and thus would not have been able to prevail on his claims. Id. The Ninth Circuit rejected this argument, noting that "even a petitioner with purportedly bad character and possibly a weak case has a right to a fair hearing." Id. Because the outcome of the case may have been different absent the due process violations, the case was remanded for a new hearing. Id.

Put another way, in answering these questions, the Court is *not* to put itself in the shoes of the immigration judge before whom Mr. Garcia appeared in 2001. A long line of cases from the Supreme Court on down make clear that this Court's determination is much different. The only question before the Court is whether Mr. Garcia had a plausible ground of relief available to him. See, e.g., INS v. St. Cyr, 533 U.S. 289 (2001), Ubaldo-Figueroa, 364 F.3d 1042, United States for Leon-Paz, 340 F.3d 1003 (9th Cir. 2003). While there may be no case explicitly defining "plausible" in this context, Webster's Third New International Dictionary 1736 (1993), defines "plausible" as "superficially fair [or] reasonable . . ." and "superficially worthy of belief." This is, of course, a much lower and less discretionary standard than Mr. Garcia would have faced in immigration court. If Mr. Garcia can show a plausible ground for relief, then the Court must grant this motion.

**1.  Mr. Garcia was eligible for voluntary departure in lieu of deportation.**

An alien may apply for voluntary departure in lieu of being subject to removal proceedings or prior to the conclusion of those proceedings. 8 U.S.C. § 1229c, Immigration and Nationality Act § 240B.

Voluntary departure is divided into two distinct categories. See Department of Homeland Security Border and Transportation Security Directorate Immigration and Customs Enforcement Office of Detention and Removal, Detention and Deportation Officers' Field Manual, Chapter 11, 11.3(b) (2002). Voluntary departure prior to the completion of removal proceedings is granted pursuant to section 240B(a) of the Immigration and Nationality Act ("Act")[3]. Id. Voluntary departure after completion of removal proceedings is granted pursuant to 240B(b) of the INA. Id. An alien may be granted voluntary departure for a period of up to 120 days without being required to establish good moral character if the relief is granted prior to the completion of removal proceedings, under section 240B(a) of the Immigration and Nationality Act. In Re Cordova, 22 I & N Dec. 966 (BIA 1999) (citing Matter of Arquelles, Interim Decision 3399 (BIA 1999). The requirements for granting of voluntary departure under this section are set forth in 8 C.F.R. § 1240.26(b)(1)(I). An alien is eligible for voluntary departure pursuant to section 240B(a) if he:

(a) Makes such request prior to or at the master calendar[4] hearing at which the case is initially calendared for a merits hearing;
(b) Makes no additional request for relief;
(c) Concedes removability;
(d) Waives appeal of all issues; and
(e) Has not been convicted of an [aggravated felony or crimes relating to national security]

8 C.F.R. § 1240.26 (2005)

If an alien applies for voluntary departure at the conclusion of removal proceedings under INA § 240B(b) different requirements and conditions apply. Arguelles-Campos, 22 I. & N. Dec. 816. Under this section of the statute and alien must have been physically present for one year and must show that he is a person of good moral character and has been for the 5 years preceding the removal hearing, in addition to not having been convicted of an aggravated felony. Id. Under either provision of the Act the Immigration

---

[4]The master calendar hearing is a understood to be a preliminary stage of the proceedings at which the Immigration Judge can identify issues, make preliminary determinations of eligibility for relief, resolve uncontested matters and schedule further hearings. In Re Cordova, 22 I & N Dec. 968. It is at this stage in the proceedings that the Immigration Judge generally ensures that an alien has been advised of his rights under the Act, including the right to apply for relief, as well as told their obligations with the Immigration Court. Id. It is not necessary that the alien request the relief at the first master calendar hearing. In RE Arguelles-Campos, 22 I. & N. Dec. 811 (BIA 1999). However, it should be noted that at any point in the proceedings the Service can stipulate to a grant of voluntary departure under INA 240B(a). Id.

1  Judge may set reasonable conditions to secure the aliens departure from the country, such as a bond or the
2  surrender of travel documents. Id.
3      As evidenced from the significant differences between voluntary departure under sections 240B(a)
4  and 240B(b) of the Act it is clear that Congress intended the two provisions to be used for different purposes.
5  Id. Voluntary departure under section 240B(a) of the Act requires far less of the alien than does voluntary
6  departure under section 240B(b). Id. An alien must request relief under section 240B(a) either in lieu of
7  being subject to proceedings or very early in removal proceedings, allowing an immigration judge to quickly
8  dispose of numerous cases on their docket. Id. "We think Congress contemplated that the Immigration
9  Judges would have broad authority to grant voluntary departure before the conclusion of removal
10 proceedings to assist in promptly bringing cases to conclusion." Id. at 821.
11     Mr. Garcia was eligible for voluntary departure under section 240B(a) of the Act, in lieu of being
12 deported. The requirements for this type of voluntary departure require only that he concede removability,
13 make no request for other forms of relief and waive appeal. Mr. Garcia has not been convicted of an
14 aggravated felony and thus is eligible for pre-hearing voluntary departure. Mr. Garcia has shown that he
15 was prejudiced by violations of due process that occurred during his deportation.

### III.
### CONCLUSION

18     Mr. Garcia has met all three prongs of 8 U.S.C. 1326(d) that are needed for a successful
19 collateral attack on his prior removal. Because his removal was invalid, this Court must dismiss the
20 indictment.

Respectfully submitted,

23 DATED:    February 19, 2008        /s/ Carey D. Gorden
                                       **CAREY D. GORDEN**
24                                     Federal Defenders of San Diego, Inc.
                                       Attorneys for Mr. Garcia