KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-6228

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEDRO GARCIA, ) <br> ) <br> Defendant. ) <br> ) | Criminal Case No. 08-CR-0063 LAB <br><br> Date: February 25, 2008 <br> Time: 2:00 p.m. <br><br> GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE TO: <br><br> (1) PRECLUDE GOVERNMENT FROM USING DEPORTATION DOCUMENTS FOR ALIENAGE; <br> (2) EXCLUDE CERTIFICATE OF NON-EXISTENCE OF RECORD; <br> (3) PRECLUDE 404(b) & 609 EVIDENCE; <br> (4) ALLOW ATTORNEY CONDUCTED VOIR DIRE; <br> (5) PRECLUDE REFERENCE TO DEFENDANT AS "ALIEN"; <br> (6) ORDER PRODUCTION OF THE GRAND JURY TRANSCRIPT; <br> (7) SUPPRESS THE DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT; <br> (8) PRECLUDE EXPERT TESTIMONY; <br> (9) PRECLUDE EVIDENCE OF A REINSTATMENT OF DEPORTATION; <br> (10) LEAVE TO FILE FURTHER MOTIONS <br><br> TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney, and hereby files its response and opposition to Defendant's motions in limine. This response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF FACTS

### A. Procedural History

A federal grand jury returned a one count indictment on January 9, 2008, charging Defendant with attempted entry into the United States after deportation, in violation of Title 8, United States Code, Section 1326.

### B. Offense Conduct

#### 1. Defendant Attempts to Enter the U.S.

On October 21, 2007, at approximately 9:05 p.m., Defendant Garcia attempted to enter the United States from Mexico through the San Ysidro Port of Entry, as the passenger in a 2001 Ford Focus driven by Antonio Delgado. Defendant presented a California drivers license bearing the name "Benito Villa" to Customs & Border Protection (CBP) Officer Arambulo. Mr. Garcia told Inspector Arambulo that he was born in Los Angeles, California. Officer Arambulo suspected that Mr. Garcia was not the lawful owner or holder of the California drivers license he had presented and that Garcia had made a false claim of U.S. citizenship. For that reason, Officer Arambulo referred Defendant, the vehicle and its other passengers to the secondary inspection area.

In secondary, CBP Officer Scott Haynes checked Defendant's fingerprints through the AFIS/IDENT computer. The computer system determined that Defendant was, in fact, Pedro Garcia nad a citizen and national of Mexico. It also indicated that Defendant had been previously removed to Mexico. Defendant was then referred to the SYS POE Enforcement team.

Due to personnel shortages and a backlog of alien smuggling cases, CBP Officer Brooks was unable to conduct further queries on Mr. Garcia until the following morning, October 22, 2007 at approximately 5:00 a.m. At that time, Officer Brooks was able to determine Defendant's immigration

history as well as his past criminal record in the United States. It was found that Defendant has been previously deported from the United States to Mexico on May 2, 2001; November 9, 2000; and March 11, 2004. Immigration Service records also showed that he had neither applied for nor received the permission of the U.S. Attorney General to re-enter the U.S.

At approximately 6:30 a.m. that same morning, CBP Enforcement Officer Sergio Barron advised Defendant of his Miranda rights, as witnessed by CBP Enforcement Officer Eric Velazquez. Defendant indicated that he understood al of his rights and was willing to be questioned and make a statement without counsel being present. Officers Barron and Velazquez noted that he did not appear to be ill, intoxicated or under the influence of drugs.

Mr. Garcia admitted that he is a citizen of Mexico and not the United States. He also admitted that he had been previously deported from the U.S. to Mexico. If he had successfully entered the U.S. the night before, he told the officers, he intended to travel to Los Angeles. He stated that the other occupants of the vehicle did not know his immigration status and that he had met them in a bar in Los Angeles before having driven with them to Tijuana to go to a few bars. At that time, Defendant declined to answer any further questions. He was notified of his right to have the Mexican consulate notified of his apprehension and he requested that it be so notified.

2. <u>Defendant's Criminal Record</u>

Records and a fingerprint comparison also revealed that Defendant had been convicted of Attempted Entry to the United States after Deportation/Removal on April 8, 2003, for which he received a sentence of 18 months custody, and on October 11, 2006, for which he received a sentence of 20 months custody. Both convictions occurred in the U.S. District Court in Utah. On October 31, 2002, he was also convicted of Illegal Possession/Use of a controlled substance, for which he received a 0-5 year sentence in state court.

## II

## **ARGUMENT**

**A.   Use of Deportation Documents**

The Government incorporates by reference its arguments set forth in its motions <u>in limine</u> filed February 12, 2008. The Government does not intend to use the warrant of deportation and order of

1 deportation to establish alienage. Instead, the Government will use Defendant's post-<u>Miranda</u> admissions and admissions during his deportation proceeding and prior plea colloquy to establish alienage. However, the Government will seek to admit the deportation documents as evidence of a prior lawful order of deportation, an element of the offense. Accordingly, Defendant's motion must be denied.

### B. The Certificate of Non-Existence of Record

The Government incorporates by reference its arguments set forth in its motions <u>in limine</u> filed February 12, 2008. The Ninth Circuit has held the Certificate of Non-Existence of Record is admissible and does not violate the Confrontation Clause. United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005). Accordingly, Defendant's motion must be denied.

### C. Preclude 609 and 404(b) Evidence

The Government incorporates by reference its arguments set forth in its motions in limine filed February 12, 2008. The Government intends to offer 404(b) evidence regarding Defendant's illegal attempts to re-enter the United States, including his guilty plea and conviction in 2003 and 2006 of the identical offense under 8 U.S.C. § 1326. The Government will also seek to impeach Defendant using his felony convictions in 2000, 2003 and 2006 under Rule 609 if Defendant takes the stand to testify. The Government gave written notice of this intention on February 12, 2008. Moreover, the Government will seek to admit the Defendant's prior admissions at his 2003 and 2006 plea colloquy for evidence of alienage. Such written notice was given on February 12, 2008.

### D. Allow Attorney Conducted Voir Dire

The Government incorporates by reference its arguments set forth in its motions <u>in limine</u> filed February 12, 2008. The Government does not oppose this motion so long as the Court grants an equal amount of time to the Government to conduct voir dire.

### E. Reference to Defendant as the "Alien"

The Government does not intend to refer to the Defendant as the "alien" and will instruct each of its witnesses not to make such reference.

**F.     Grand Jury Transcripts**

The Government does not intend to call anyone to testify at trial who testified before the Grand Jury in this case. If the Government does decide to call a witness who testified before the Grand Jury, it will make available any transcripts.

**G.     Deportation Audiotape or Transcript**

Absent a stipulation, the Government seeks to introduce the portion of the audiotape and transcript of Defendant's removal hearing to establish Defendant's alienage and his conscious desire to enter the United States without consent. The audiotape of the removal hearing was certified as genuine and authentic by the United States Immigration Court. The audiotape of the removal hearing is also part of Defendant's official A-File, and, consequently, it is admissible under the public records exception to the hearsay rule. See Fed. R. Evid.803(8)(B); Hernandez-Herrera, 273 F.3d at 1217-18.

Transcripts of tape-recorded proceedings may be given to a jury in a criminal trial for the purpose of aiding the jury in following along a tape recording if certain precautions are taken to ensure the accuracy of the transcript. See United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001). Any prejudice arising from the introduction of the transcript can be ameliorated by a limiting instruction emphasizing the jury's role as ultimate fact-finder. See United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996). The parties could stipulate to the portions of the audiotape and prepare a redacted transcript that excludes references to Defendant's prior criminal convictions and any portions that relate to any other aliens at the deportation hearing. Alternatively, to avoid undue delay and the potential for prejudice, the Government proposes that the parties stipulate that 1) Defendant admitted under oath during his deportation hearing on November 9, 2000, and on May 2, 2001, that he is not a United States citizen and is a Mexican citizen and 2) that at the deportation hearing on November 9, 2000 and on May 2, 2001, the Immigration Judge informed Defendant that he was not allowed to come back to the United States absent receiving legal permission to come back to the United States.

**H.     Expert Testimony**

The Government incorporates by reference its arguments set forth in its motions in limine filed February 12, 2008. The Government intends to offer testimony about deportation and removal proceedings from the A-File Custodian Agent Jorge Salazar. Moreover, the Government intends to offer

1  testimony concerning Agent Salazar's own searches for consent or permission on DHS databases.
2  Furthermore, the Government intends to offer expert testimony relating to the fingerprints of the
3  Defendant, as long as the Court grants the Government's motion for fingerprint exemplars. Such
4  testimony relates to elements of the offense and should not be precluded.

5  **I.    EVIDENCE OF REINSTATEMENT**

6  Defendant cites Morales-Izquierdo v. Gonzales, 486 F.3d 484 (9th Cir. 2007) (en banc) to argue
7  that any reinstatement should not be allowed as evidence of a removal. The en banc court actually held
8  that reinstatements were valid, and that such reinstatements specifically do not violate due process. While
9  Defendant parses out statements from the en banc opinion to justify his position, it is clear that the actual
10  holding of the case is inapposite to what Defendant seeks. The Government request the Court to deny
11  Defendant's motion precisely on the grounds of the en banc court's decision in Morales-Izquierdo.

12  **J.    LEAVE TO FILE FURTHER MOTIONS**

13  The Government does not oppose this motion, as long as it equally applies to the Government as
14  well.

15  **K.    THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**
16

17  Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial.
18  See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the
19  deportation is not an element of the offense under Section 1326, so this issue should not be presented to
20  or determined by a jury. Id. at 493.

21  Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit
22  held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

23  A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying
   deportation order if he or she did not exhaust administrative remedies in the deportation
24  proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver
   of the right to appeal a deportation order precludes a later collateral attack. (citations
25  omitted).

26  In this case, Defendant validly waived his right to appeal his May 2001 deportation order and,
27  therefore, should be precluded from collaterally attacking his deportation. It would be inappropriate to
28  raise this issue before a jury, which is not tasked with determining the validity of the deportation.

# III

# **CONCLUSION**

For the above stated reasons, the United States respectfully requests that the Defendant's motions in limine be denied except where unopposed.

DATED:      February 22, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


s/ Stewart M. Young
STEWART M. YOUNG
Assistant U.S. Attorney
