KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-6228/(619) 557-6741 (Fax)
Email: Stewart.young@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PEDRO GARCIA, <br><br> Defendant. | Criminal Case No. 08CR0063-LAB <br><br> **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** <br><br> Date:  February 25, 2008 <br> Time:  2:00 p.m. <br><br> Honorable Larry A. Burns |

COMES NOW Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and STEWART M. YOUNG, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motion to Dismiss Indictment.

**I**

**STATEMENT OF THE CASE**

On January 9, 2008, a federal grand jury returned a one-count indictment against Defendant, charging him with Attempted Entry After Deportation, in violation of Title 8, USC, Section 1326(a) and (b). Defendant was arraigned on the Indictment on February 4, 2008, before the Court. On January 14, 2008, Defendant filed motions for discovery. To date, the Government has provided over 200 pages of discovery, a DVD recording of his advisal of rights and subsequent admissions, as well as the deportation hearing tape. Defendant's counsel has also had an opportunity to inspect Defendant's A-

File. On Tuesday, February 19, 2008, defendant filed the instant motion to dismiss the indictment.

## II

## STATEMENT OF FACTS

**A.   Offense Conduct**

    1.   Defendant's Criminal Record

On September 21, 1999, Garcia was convicted in the Third District Court, Salt Lake County, for attempted possession/use of a controlled substance: to wit, cocaine, in violation of Utah Code Section 58-37-8(2)(a)(i), a Class A misdemeanor, and sentenced to 180 days in jail. He was originally charged with a Third Degree Felony, but the filed Information has hand-written changes on it (apparently without updating the Utah Code Ann. Section).[1]

On May 1, 2000, Garcia was convicted again in the Third District Court, Salt Lake Count, for attempted possession/use of a controlled substance: to wit, cocaine, in violation of Utah Code Ann. 58-37-8(2)(a)(i), a third-degree felony, and sentenced to a 0-5 year sentence. He was originally charged with possession with intent to distribute, a second degree felony, a violation of Utah Code Ann. 58-37-8(2)(a)(iii), but the filed Information has hand-written changes on it (again apparently without updating the Utah Code Ann. Section).[2]

On October 31, 2002, he was also convicted of Possession/Use of a controlled substance, to wit: cocaine, in violation of Utah Code Ann. 58-37-8(2)(a)(i), for which he received 30 days jail and a suspended prison sentence, along with 36 months probation. Probation was subsequently revoked in 2005 and he received an indeterminate term not to exceed 5 years in state prison.

It further appears that Garcia's rap sheet was not updated, given that a faxed sheet from the Salt Lake County Sheriff's Office on October 5, 2002 indicates that Garcia was charged with possession of controlled substance (cocaine) (the first conviction) and possession with intent to distribute a controlled substance (the apparent second conviction).[3]

---

[1]   See Exhibit A (September 1999 Conviction Documents).

[2]   See Exhibit B, p.2 (May 1, 2000 Conviction Documents).

[3]   Exhibit C, SLC Sheriff's Office Rap Sheet faxed to INS on October 5, 2002.

Records and a fingerprint comparison revealed that Defendant had been convicted of Attempted Entry to the United States after Deportation/Removal on April 8, 2003, for which he received a sentence of 18 months custody, and on October 11, 2006, for which he received a sentence of 20 months custody. Both convictions occurred in the U.S. District Court in Utah.

2.    Defendant's Immigration History

Defendant Pedro Garcia, aka Pedro Garcia-Hernandez, aka Pedro Villa, was born on July 8, 1972, in Morelia, Michoacan, Mexico. He entered illegally and subsequently became a Legal Permanent Resident. He then began to amass his criminal record, subsequently leading to deportation proceedings. He was first deported from the United States back to Mexico after a hearing before an immigration judge, on November 9, 2000.[4] On May 2, 2001, he was again ordered deported by an immigration judge and deported to Mexico.[5] He was administratively removed to Mexico again on March 11, 2004,[6] and on September 14, 2007.[7]

For the first deportation, on November 9, 2000, Garcia received a Notice to Appear ("NTA") dated September 12, 2000.[8] It stated that Garcia was convicted on September 21, 1999, for Attempted Possession/Use of a Controlled Substance, in violation of Utah Code Ann. § 58-37-8(2)(a)(I). It further stated that he was convicted of Unlawful Possession of a Controlled Substance, in violation of Utah Code Ann. § 58-37-8(1)(a)(iii). It appears that the NTA stated the correct statement of conviction, but cited the incorrect statute (the possession with intent to distribute statute, rather than the possession statute, which is Utah Code Ann. § 58-37-8(2)(a)(i)). Garcia was then ordered removed by an Immigration Judge on November 9, 2000, after a hearing.[9] Garcia subsequently returned to the United States after deportation.

---

[4]    Exhibit D (November 2000 Deportation Documents).

[5]    Exhibit E (May 2001 Deportation Documents).

[6]    See Exhibit F (March 2004 Removal Documents).

[7]    See Exhibit G (September 2007 Removal Documents).

[8]    Exhibit D, p. 1 (Notice to Appear for November 2000 Deportation).

[9]    Exhibit D, p. 3-4 (IJ Order).

Garcia apparently challenges the second deportation - the May 2, 2001 hearing before another Immigration Judge. Garcia received the NTA dated April 19, 2001.[10] On April 26, 2001, additional charges of deportability were added, stating Garcia's prior 1999 cocaine possession conviction.[11] These charges further stated that Garcia had been convicted on May 9, 2000, for the offense of possession with intent to distribute a controlled substance, to wit: cocaine, in violation of Utah Code Ann. § 58-37-8(1)(a)(iii). Unfortunately, it appears that this incorrect conviction (possession with intent to distribute cocaine, rather than possession of cocaine), was written on the NTA (and likely whatever documents the IJ received and consulted during the IJ hearing).

The IJ hearing was conducted on May 2, 2001 by Judge James Vandello. Garcia was present at that hearing and responded when Judge Vandello called his name. Judge Vandello stated that the Government claimed he was convicted of possession of cocaine in September 1999, and convicted of possession with intent to distribute cocaine in May 2000. Judge Vandello also stated that the Government believed that Garcia was previously removed on November 14, 2000 and came back without permission. Garcia stated that he understood these charges by the Government. Garcia was asked if he entered in San Ysidro of November 2000, to which he replied "yes." The IJ then asked Garcia if he was convicted of possession of cocaine in September 1999, and if he was convicted of possession for sale of cocaine in May 2000. Garcia answered in the affirmative as to both convictions. Garcia also confirmed that he was removed through El Paso in November 2000.

At the end of the hearing, the IJ explained that some of the aliens might have the possibility of voluntary departure at their own expense, rather than removal. Garcia requested voluntary departure, and the IJ took a moment to look at the documents that he had for Garcia. The IJ then indicated that Garcia did not have the possibility of voluntary removal because he had been convicted of an aggravated felony. Garcia was then ordered deported and removed from the United States.[12]

---

[10] Exhibit E, p. 1 (NTA for May 2001 Deportation).

[11] Exhibit E, p.2 (Additional Charges of Inadmissibility/Deportability).

[12] A transcription of this tape is forthcoming, but the United States does not contest defendant's articulated facts as to what occurred at the deportation hearing.

3.      Defendant Attempts to Enter the U.S. (For an Apparent Fifth Time)

On October 21, 2007, at approximately 9:05 p.m., Defendant Pedro Garcia ("Garcia") attempted to enter the United States from Mexico through the San Ysidro Port of Entry, as the passenger in a 2001 Ford Focus driven by Antonio Delgado. Defendant presented a California drivers license bearing the name "Benito Villa" to Customs & Border Protection ("CBP") Officer Arambulo. Mr. Garcia told Inspector Arambulo that he was born in Los Angeles, California. Officer Arambulo suspected that Mr. Garcia was not the lawful owner or holder of the California drivers license he had presented and that Garcia had made a false claim of U.S. citizenship. For that reason, Officer Arambulo referred Defendant, the vehicle, and its other passengers, to the secondary inspection area.

In secondary, CBP Officer Scott Haynes checked Defendant's fingerprints through the AFIS/IDENT computer. The computer system determined that Defendant was, in fact, Pedro Garcia, and a citizen and national of Mexico. It also indicated that Defendant had been previously removed to Mexico. Defendant was then referred to the SYS POE Enforcement team.

Due to personnel shortages and a backlog of alien smuggling cases, CBP Officer Brooks was unable to conduct further queries on Mr. Garcia until the following morning, October 22, 2007, at approximately 5:00 a.m. At that time, Officer Brooks determined Defendant's immigration history as well as his past criminal record in the United States. Officer Brooks found that Defendant had been previously deported from the United States to Mexico on November 9, 2000; May 2, 2001; and March 11, 2004. Immigration Service records also showed that he had neither applied for nor received the permission of the U.S. Attorney General to re-enter the U.S.

At approximately 6:30 a.m. that same morning, CBP Enforcement Officer Sergio Barron advised Defendant of his Miranda rights, as witnessed by CBP Enforcement Officer Eric Velazquez. Defendant indicated that he understood all of his rights and was willing to be questioned and make a statement without counsel being present. Officers Barron and Velazquez noted that he did not appear to be ill, intoxicated or under the influence of drugs.

Mr. Garcia admitted that he is a citizen of Mexico and not the United States. He also admitted that he had been previously deported from the U.S. to Mexico. If he had successfully entered the U.S. the night before, he told the officers, he intended to travel to Los Angeles. He stated that the other

occupants of the vehicle did not know his immigration status and that he had met them in a bar in Los Angeles before driving with them to Tijuana to go to a few bars. At that time, Defendant declined to answer any further questions. He was notified of his right to have the Mexican consulate notified of his apprehension and he requested that it be so notified.

## III

## DISCUSSION

### A.  Right to Attack Deportation

The United States concedes that Garcia has the right to collaterally attack his underlying deportation. United States v. Ubalda-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004); United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). To successfully collaterally attack his deportation, Garcia must show that 1) he exhausted all his administrative remedies available to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and 3) the entry of the order was fundamentally unfair. Ubaldo-Figueroa, 364 F.3d at 1048. Such order would be fundamentally unfair if Garcia's due process rights were violated by defects in his underlying deportation proceeding, and if he suffered prejudice as a result of those defects. Id.

### B.  INA Background

Defendant argues that the deportation was invalid because he was not informed of his rights to relief from deportation and because the Immigration Judge improperly advised him that he was not entitled to relief because he had been convicted of an aggravated felony. Some background on the immigration laws may be helpful in understanding Defendant's position.

Former Section 212 of the Immigration and Nationalization Act ("INA") has been interpreted to authorize any permanent resident alien to apply for discretionary waiver from deportation. See Ayala-Chavez v. INS, 944 F.2d 638, 640 n. 2 (9th Cir. 1991). In 1990, Congress amended § 212 to preclude discretionary relief for anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. Pub.L. No. 101-649, § 511, 104 Stat. 4978, 5052 (1990) (amending 8 U.S.C. § 1182(c)). In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which, in § 440(d), identified the set of offenses for which convictions

would preclude relief under § 212(c). See Pub.L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996) (amending 8 U.S.C. § 1182(c)). Also in 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed § 212 and replaced it with the new procedure of cancellation of removal, under which persons who had been convicted of an aggravated felony are ineligible for such relief. See IIRIRA, Pub.L. No. 104-208 Division C, § 304(b), 110 Stat. 3009-546, 3009-597 (1996) (repealing § 212(c)); see id. § 340(a)(3), 110 Stat. 3009-594, codified at 8 U.S.C. § 229b(a)(3) (2001) (prohibiting cancellation of removal for persons convicted of aggravated felonies). It also expanded the definition of "aggravated felony" by reducing the prison sentence required to trigger aggravated-felony status from five years to one year. See IIRIRA § 321(a)(3), 110 Stat. 3009-627, codified at 8 U.S.C. § 1101(a)(43)(F) (2001).

Voluntary departure is generally viewed as relief from removal. Relief from removal under 8 U.S.C. § 1229c(a) is categorically barred to two classes of aliens: those involved in terrorism-related activity (not at issue here), and those "deportable under section 1227(a)(2)(A)(iii)," which in turn means those "convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1229c(a); § 1227(a)(2)(A)(iii).

Section 1101(a)(43) defines "aggravated felony" as "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c) defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2). Lastly, the relevant provision of the Controlled Substances Act defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13).

### C. Defendant Cannot Establish Prejudice

The United States first contends that Defendant did not adequately exhaust his administrative remedies because his waiver of appeal was valid. For a waiver to be valid, a defendant must intentionally relinquish and abandon a known right or privilege, and the Immigration Judge must explore the possibility of any potential relief from deportation. Ubalda-Figueroa, 364 F.3d at 1049. The IJ is required to advise the alien of potential relief and give him the opportunity to develop the record when there is an inference that the alien is eligible for relief from deportation. Id. In this case,

1  the documents in front of the IJ, such as the NTA, clearly indicated that defendant was not eligible
2  for relief.  Additionally, Defendant himself admitted (erroneously) that he had been convicted of
3  possession of cocaine with intent to distribute, which is a drug trafficking felony, and therefore an
4  aggravated felony.  However, the United States will develop its argument further and not rely on the
5  contention that defendant failed to exhaust his administrative remedies.

6  As stated previously, to comport with due process, an Immigration Judge is solely required to
7  inform an individual of possible relief when the record before that judge established the possibility of
8  that relief. See United States v. Muro-Inclan, 249 F.3d 1149, 1183-1184 (9th Cir. 2001).  Defendant's
9  argument is that the Immigration Judge improperly believed that Defendant had been convicted of an
10 aggravated felony, and so he erred by concluding that defendant was not eligible for voluntary
11 departure.  As will be discussed below, while the Immigration Judge's documents might have
12 included incorrect convictions, nevertheless, Defendant had been convicted of an aggravated felony
13 and was ineligible for voluntary departure.  Defendant must demonstrate the possibility of relief
14 based on the record.  But, as demonstrated below, defendant cannot prevail on his claim.

15 An alien can generally show prejudice by demonstrating a "plausible ground for relief from
16 deportation."  Ubaldo-Figueroa, 364 F.3d at1050. However, an alien with a serious criminal history
17 must demonstrate "unusual or outstanding equities" in order to show that he was prejudiced by the
18 deficiency in the underlying deportation proceeding. United States v. Gonzalez-Valerio, 342 F.3d
19 1051, 1056-57 (9th Cir.2003).

20 Prior to his May 2, 2001 deportation hearing, Garcia suffered two convictions for possession
21 of cocaine, one felony conviction and one misdemeanor conviction.  Accordingly, the district court
22 may require Garica to demonstrate unusual or outstanding equities in order to demonstrate prejudice.
23 See Alaelua v. INS, 45 F.3d 1379, 1380-81 (9th Cir.1995) (single conviction for five felony counts of
24 selling heroin); Ayala-Chavez v. INS, 944 F.2d 638, 640-42 (9th Cir.1991) (possession of cocaine
25 and multiple traffic violations).

26     1.    <u>Defendant Cannot Demonstrate Appropriate Equities</u>

27 Garcia cites Ubaldo-Figuerora generously throughout his motion, but if Garcia is to liberally
28 cite this case, he must also live with its consequences and results.  Indeed, it is clear that Garcia fails

to demonstrate similar equities present in Ubaldo-Figueroa, such as Ubaldo-Figueroa's exemplary employment history and marriage to a United States citizen. Ubaldo-Figueroa, 364 F.3d at 1051. Thus, even if Garcia has a less serious criminal history than Ubaldo-Figueroa, the scarce equities in his favor make it implausible that Garcia would have received discretionary relief from deportation. See Ayala-Chavez, 944 F.2d at 642 (upholding BIA's determination that Ayala-Chavez's evidence of eighteen-year residence, steady history of employment, strong family ties, and support of his minor United States citizen child were "substantial, but not outstanding" equities that did not outweigh the seriousness of his cocaine possession conviction).

### 2.   Section 212(h) Waiver

The record is also clear that Garcia's conviction for possession of cocaine rendered him ineligible for a §212(h) waiver - regardless of whether that conviction was characterized as an aggravated felony, a felony, or a misdemeanor - because an alien convicted of a drug offense is statutorily eligible for a §212(h) waiver only if the conviction "relates to a single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h). Since both of Garcia's convictions involved cocaine, such relief was not available to him.

### 3.   Section 1229c(a) Voluntary Departure Issue

The Ninth Circuit, in Ayala-Chavez, specifically stated that it agreed with the Eleventh Circuit that "the immigration laws clearly reflect strong Congressional policy against lenient treatment of drug offenders." Blackwood v. INS, 803 F.2d 1165, 1167 (11th Cir.1988). Indeed, "Congress has forcefully expressed our national policy against persons who possess controlled substances by enacting laws . . . to exclude them from the United States if they are aliens." Mason v. Brooks, 862 F.2d 190, 194-95 (9th Cir.1988).

As stated previously, section 1101(a)(43) defines "aggravated felony" as "illicit trafficking in a controlled substance ... including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c) defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2). The relevant provision of the Controlled Substances Act defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13).

In the wake of Lopez v. Gonzales, 127 S. Ct. 625 (2006), which held that simple drug possession is generally not categorically an "aggravated felony," questions have arisen about exceptions to that rule. Some of these exceptions were implicated in United States v. Figueroa-Ocampo, 494 F.3d 1211, 1215-17 (9th Cir. July 24, 2007). Akin to the instant case, Figueroa-Ocampo dealt with the issue of simple possession convictions, and specifically discussed the application of Lopez:

> In Lopez, the Court held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." Lopez, 127 S.Ct. at 633. In so holding, the Court rejected the government's argument that the term "felony punishable under the Controlled Substances Act" refers to any offense that is punishable by federal law as either a felony or a misdemeanor. Id. at 629.

Figueroa-Ocampo, 494 F.3d at 1215-16.

It is important to note that Figueroa-Ocampo also stated "it is beyond dispute that Lopez applies in both criminal sentencing and immigration matters." Id.

Given this statement, a gander at Lopez is necessary to understand the affect of not one, but two, simple drug possession convictions for both immigration and criminal purposes. The Lopez Court made it very clear that, while a simple drug possession did not warrant an aggravated felon designation, recidivist drug possession convictions fell victim to a "statutory override" such that they did constitute "drug trafficking" and would be categorized as aggravated felonies. 127 S. Ct. at 630 n.6. In footnote six, the Court wrote:

> Of course, we must acknowledge that Congress did counterintuitively define some possession offenses as "illicit trafficking." Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in § 924(c)(2), such as possession of cocaine base and recidivist possession, see 21 U.S.C. § 844(a), clearly fall within the definitions used by Congress in 8 U.S.C. § 1101(a)(43)(B) and 18 U.S.C. § 924(c)(2), regardless of whether these federal possession felonies or their state counterparts constitute "illicit trafficking in a controlled substance" or "drug trafficking" as those terms are used in ordinary speech. But this coerced inclusion of a few possession offenses in the definition of "illicit trafficking" does not call for reading the statute to cover others for which there is no clear statutory command to override ordinary meaning.

Lopez, 127 S. Ct. at 630 n.6.

Simple possession is a misdemeanor punished under the Controlled Substances Act, 21 U.S.C § 844(a). A fair reading of 21 U.S.C. § 844 demonstrates at least three (3) exceptions to the rule that

a simple drug possession offense is normally a federal misdemeanor, with a maximum term of imprisonment of 1 year:

(1) If the defendant "commits such offense [simple possession] after a . . . prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final," the maximum penalty is 2 years in custody, therefore allowing for felony punishment even under federal law.

(2) If the conviction is for possession of cocaine base (crack), the maximum can be up to twenty years custody.

(3) If the conviction is for possession of flunitrazepam (the date-rape drug), the maximum is three years custody.

In the wake of Lopez, the Ninth Circuit has not construed any of the foregoing exceptions. Instead, as noted, in Figueroa-Ocampo, the Ninth Circuit simply recognized that Lopez overruled prior precedent holding that a first-time possession conviction can still be an "aggravated felony" as long as it is treated as a felony under state law, regardless of how it would be treated under federal law. See Figueroa-Ocampo, 494 F.3d at 1216 (acknowledging that Lopez overruled United States v. Ibarra-Galindo, 206 F.3d 1337 (9th Cir. 2000)).

Several out-of-circuit courts have addressed, post-Lopez, the continuing viability of the exceptions listed above. Most prominently, the Southern District of Texas in United States v. Castro-Coello, 474 F.Supp.2d 853 (S.D. Tex. Feb. 6, 2007), aff'd sub nom, United States v. Molina-Gonzalez, 2007 WL 2046878 (5th Cir. July 17, 2007) (per curiam) (unpublished) dealt with whether simple possession could be a basis for an aggravated felony. The Castro-Coello court asked whether several defendants in 8 U.S.C. § 1326 cases could be subject to 8-level enhancements for removal following an "aggravated felony," where each of the defendants had multiple prior convictions for possession of controlled substances. And that court answered "yes."

Castro-Coello began its relevant analysis by noting Lopez's holding that Congress is free to define an aggravated felony in "an unexpected way," but Congress simply "would need to tell us so." See Lopez, 127 S. Ct. at 630. Castro-Coello then noted that Lopez identified, by way of example, situations where Congress has, in fact, "told us so:"

Congress did counterintuitively define some possession offenses as "illicit trafficking." Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in § 924(c)(2), such as possession of cocaine base and recidivist possession, see 21 U.S.C. § 844(a), clearly fall within definitions used by

> Congress in 8 U.S.C. § 1101(a)(43)(B), regardless of whether these federal possession felonies or their state counterparts constitute "illicit trafficking in a controlled substance" or "drug trafficking." But this coerced inclusion of a few possession offenses in the definition of "illicit trafficking" does not call for reading the statute to cover others for which there is no clear statutory command to override ordinary meaning.

Castro-Coello, 474 F. Supp. 2d at 858 (quoting Lopez, 127 S. Ct. at 630 n.6).

According to Castro-Coello, footnote 6 of the Lopez opinion clearly reflects the Supreme Court's understanding that two or more simple possession convictions can collectively amount to an "aggravated felony" for purposes of an 8-level adjustment, so long as a defendant's criminal history falls within one of the exceptions in 21 U.S.C. § 844 (listed above) allowing for felony punishment. As the Texas district court explained:

> The clear implication by the [Lopez] Court in the [footnote 6] phrase, "does not call for reading the statute to cover others," is that "drug trafficking" does cover the exceptional situations mentioned. See Lopez, at 630. This position is bolstered by the Court's later example that a six gram possession of cocaine base could be a state law misdemeanor, but it would still be an aggravated felony in this context because it is punishable as a felony under federal law. Id. at 631-32 (citing the other exception in 21 U.S.C. § 844(a) for possession of cocaine base). The Court reasoned that Congress would not let a state dictate the consequences of federal offenses. Id. at 633.
>
> Therefore, the Lopez Court clearly, albeit in dicta, instructed that any person who can be punished hypothetically for a felony under the recidivist possession portion of 21 U.S.C. § 844(a) is subject to being labeled an aggravated felon, as defined by Congress.

Castro-Coello, 474 F. Supp. 2d at 858.

On appeal, Castro-Coello was affirmed by a panel of the Fifth Circuit in an unpublished disposition.

As for other courts' treatment of Castro-Coello, some sister districts in Texas have followed its holding. See United States v. Lopez-Molina, 494 F. Supp. 2d 517, 522 (W.D. Tex. April 17, 2007) (holding that second prior conviction for possession of a controlled substance in violation of Texas law qualified as an "aggravated felony" for purposes of 8-level enhancement under 8 U.S.C. § 1326(b); noting that in Castro-Coello, "[a]fter a thorough analysis of the Lopez decision, Judge Hanen held that a defendant's second state drug conviction, after a qualifying final prior conviction, constituted a 'felony punishable under the Controlled Substances Act,'" and concluding, "The Court sees no reason to depart from the well-reasoned analysis of Castro-Coello[.]"); United States v. Rodriguez-De Leon, 492 F. Supp. 677, 679, 682 (W.D. Tex. Mar. 15, 2007) (same; "The question

before this Court is thus whether a defendant who has two prior state drug convictions for possession, neither of which alone would be punished as a felony by federal law, has been convicted of a 'felony punishable under the Controlled Substances Act' by virtue of the increased penalties imposed by the CSA upon repeat offenders. For the reasons that follow, the Court is of the opinion that such a defendant has in fact committed an 'aggravated felony.'").

No doubt Defendant will claim that the Lopez decision has only been considered in criminal cases, rather than immigration cases. At least one panel of the Board of Immigration Appeals has addressed this issue, however, and ruled consistently with Castro-Coello. Indeed, it found that where an alien has multiple prior state convictions for drug possession, such a person is an "aggravated felon" because he could conceivably have been prosecuted for a felony violation of 21 U.S.C. § 844(a). Unfortunately, this decision was unpublished, though decided in 2007, so it can still be cited outside of immigration proceedings for persuasive, but not precedential value. In re: Jose Antonio Bernal-Rodriguez (A91 044 916), 2007 WL 1492143 (BIA May 15, 2007) (unpublished).[13]

In Bernal-Rodriguez, the alien had two convictions for criminal possession of a controlled substance, in 1997 and in 2004. In 2006, following the initiation of removal proceedings, an immigration judge found the alien removable, but granted him the discretionary relief of cancellation of removal due to his equities. On appeal, the Department of Homeland Security argued that, insofar as the alien should have been deemed an "aggravated felon" given his multiple prior convictions for possession, he was statutorily ineligible for cancellation of removal. The BIA agreed. The following two paragraphs from the opinion explain the BIA's reasoning, and also reflect reliance on Castro-Coello – which the BIA determined was persuasively reasoned:

> Under 21 U.S.C. § 844(a), an offense involving the simple possession of a controlled substance is punishable by up to 2 years' imprisonment if committed after a prior drug conviction became final.
>
> A drug offense is a "felony" under the Controlled Substances Act if it is punishable by a term of imprisonment of more than 1 year. 21 U.S.C. § 802(13), (44); 18 U.S.C. § 3559(a). Pursuant to Lopez v. Gonzales, the respondent's latter conviction therefore qualifies as a "drug trafficking crime" under 18 U.S.C. § 924(c)(2) and, by extension, an aggravated felony under section 101(a)(43)(B) of the Act, as it would be analogous to an offense punishable as a felony under the Federal

---

[13] See Exhibit H.

1  drug laws.

2  Accordingly, as the respondent hypothetically could have been punished for a felony under the recidivist possession portion of 21 U.S.C. § 844(a), the record reflects
3  that he has been convicted of an aggravated felony.

4  The only decision of which we are aware to have addressed this question subsequent to Lopez v. Gonzales, supports this view.  In Castro-Coello, a sentence
5  enhancement case, the court considered the question of whether multiple misdemeanor drug possession convictions can be aggravated felonies under the Controlled
6  Substances Act due to the fact that a defendant is a repeat offender.  After citing to the Fifth Circuit's recent conclusion in United States v. Estrada-Mendoza, 475 F.3d 258,
7  261 (5th Cir. 2007), that "Lopez applies with equal force for immigration and Criminal cases," the court observed that "the Lopez Court clearly, albeit in dicta,
8  instructed that any person who can be punished hypothetically for a felony under the recidivist possession portion of 21 U.S.C. § 844(a) is subject to being labeled an
9  aggravated felon, as defined by Congress."  Id. at 858.

10  Consequently, we find that the respondent's aggravated felony conviction renders him statutorily ineligible for cancellation of removal under section 240A(a) of
11  the Act. . . .

12  Bernal-Rodriguez, 2007 WL 1492143 (citations omitted).

13  Notably, not only did the BIA find Castro-Coello persuasive, it went a step further than did

14  Castro-Coello in characterizing the Lopez decision.  Id. at n.2 ("We disagree [with Castro-Coello]

15  that the Supreme Court's statements in this regard [in Lopez] were dicta as they were an integral part

16  of its holding that what controls is not whether the State punishes the conduct as a felony but whether

17  the offense, if prosecuted federally, would be a felony.").

18  In this district, the United States has recently taken the position that multiple drug possession

19  convictions constitutes an "aggravated felony" now that Lopez had come down.  In one case in this

20  district, United States v. Ramirez-Estrada, CA No. 06-50473, another illegal re-entry case, the issue

21  on appeal is whether the alien was properly subjected to an 8-level adjustment for prior removal

22  following an "aggravated felony."  The alien had multiple prior state drug possession convictions in

23  1994 and 1997.  Although the district court imposed the 8-level adjustment relying on pre-Lopez law,

24  the United States is defending the decision by relying on Castro-Coello.  Ramirez-Estrada is still

25  pending, and the case has yet to be argued before the Ninth Circuit.

26  Another case to deal with this precise issue is from the District of Kansas in the Tenth Circuit,

27  United States v. Plascencia-Gomez, CA 06-3343.  There, an illegal re-entry defendant was also

28  subject to an 8-level adjustment for prior removal after an "aggravated felony."  The defendant

appealed while Lopez was still being considered by the Supreme Court. Following the issuance of the Lopez opinion in December 2006, the United States agreed to remand the case to the district court to correct the defendant's sentence. However, the Tenth Circuit – sua sponte – directed the parties to brief whether the defendant might still have been properly treated as an aggravated felon, on the basis of his multiple prior state drug possession convictions. See 2007 WL 1538435, *1 (Appellee United States' Brief in 06-3343,[14] Statement of the Case: "The defendant's sentence was enhanced as an 'aggravated felony' based on a prior state court felony conviction for possession of cocaine. The defendant reserved his right to appeal an 'aggravated felony' finding because the case of Lopez v. Gonzales, 127 S. Ct. 625 (2006), was pending and might be decided in a way favorable to him. It was, and the United States agreed to remand, but this Court noted that the defendant appeared to have a second state court felony conviction for possession of cocaine that, under Lopez, might justify the 'aggravated felony' enhancement applied by the district court. Accordingly, it directed the parties to go forward with briefing.").

The Government's brief in Plascencia-Gomez argues that "[i]n footnote 6 of Lopez, the Supreme Court makes clear that a second offense state court felony possession of cocaine meets the INA definition of 'aggravated felony.'" See 2007 WL 1538435, at *7. Consistent with this position, the brief also notes that "[a]lthough the United States could find no appellate court decision as yet addressing the defendant's issue, a Southern District of Texas opinion from Judge Hanen addresses this precise issue." Id., at *10 (citing Castro-Coello). So, once again, Castro-Coello arose outside of its own circuit, but now in the Tenth Circuit. Unfortunately, on September 20, 2007, the Tenth Circuit panel granted appellant's unopposed motion to remand for re-sentencing, and declined to address the issue first brought by the panel itself.

4.  Conclusion

Defendant can only prove prejudice if he can prove a plausible likelihood of success in his application for relief. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). Defendant presented no evidence that his convictions, if the Immigration Judge viewed them correctly, supplied any avenue

---

[14]  See Exhibit I.

of relief under the current caselaw. Indeed, the United States submits that <u>Lopez</u> forecloses the Defendant's argument that he was eligible for any relief, or that he was not convicted of an aggravated felony. Indeed, the United States respectfully urges this Court to apply <u>Lopez</u> to ensure that the Indictment is not dismissed, as the Immigration Judge's ultimate conclusion was, in actuality, correct. Despite the fact that the <u>Lopez</u> Court decided the recidivist issue five years after defendant's May 2001 hearing, <u>Lopez</u> should apply in accordance with Ninth Circuit law regarding intervening immigration law changes. See <u>United States v. Cervantes Gonzales</u>, 2007 WL 1879638 (9th Cir. June 28, 2007) (unpublished)[15] (" The government's argument that we should not apply our decision in <u>Ye</u> to Cervantes-Gonzales because the case was decided several years after Cervantes-Gonzales's deportation proceeding is unavailing and contrary to our precedent. See <u>United States v. Camacho-Lopez</u>, 450 F.3d 928, 929-30 (9th Cir.2006) (applying a subsequent decision during collateral review of the underlying deportation proceeding following a § 1326 conviction)." ).

Defendant also fails to show any extreme hardship, which would be necessary under § 212(h) relief. See <u>Hassan v. INS</u>, 927 F.2d 465, 467-468 (9th Cir. 1991) (stating that a showing of extreme hardship is necessary to demonstrate eligibility for Section 212(h) relief). Moreover, the equities for Defendant demonstrate that he did not have a one simple indiscretion. Defendant was admittedly convicted of a misdemeanor cocaine possession, followed up with a felony cocaine possession. Given the Supreme Court's ruling in <u>Lopez</u>, and <u>Lopez</u>'s application to both immigration and criminal proceedings in the Ninth Circuit, the United States submits that the Immigration Judge correctly stated that Defendant was an aggravated felon and that he did not have any plausible form of relief from deportation. Therefore, there is no possible prejudice. Accordingly, the United States requests that the motion be denied.

---

[15] See Exhibit J.

...

# IV

## CONCLUSION

For the above stated reasons, the United States respectfully requests that Defendant's motion be denied.

Dated: February 25, 2008

        Respectfully submitted,
        KAREN P. HEWITT
        United States Attorney

        s/ Stewart M. Young
        STEWART M. YOUNG
        Assistant United States Attorney
        Attorneys for Plaintiff
        United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                              )<br>                        Plaintiff,              )<br>                                                              )<br>            v.                                              )<br>                                                              )<br>PEDRO GARCIA,                                 )<br>                                                              )<br>                        Defendant.         )<br>_____)  | Case No. 3:08-CR-0063 LAB<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

 I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

 I am not a party to the above-entitled action. I have caused service of the Response in Opposition to Defendant's Motion to Dismiss the Indictment on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

 1. Carey Gorden, Esq.
Carey_gorden@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 2008.

             s/Stewart M. Young
             Stewart M. Young